UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                      Case No. 23-cv-10123
                                      Hon. Matthew F. Leitman

PIPER GIBSON FAKIR, *et al.*,

    Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 17)**

In this action, the United States seeks to reduce to judgment certain federal income tax liabilities assessed by the Internal Revenue Service (the "IRS") for several tax years against Abdul Fakir, Sr. ("Mr. Fakir") and Piper G. Fakir ("Mrs. Fakir"). The Fakirs do not dispute the amount of the assessments. Instead, they contend that the United States is not entitled to judgment in its favor because a portion of its claims is barred by the applicable statute of limitations. Mrs. Fakir separately argues that the United States is not entitled to judgment against her on the basis that she was an innocent spouse with respect to the tax liabilities assessed against her.

The United States has now filed a motion for summary judgment. (*See* Mot., ECF No. 17.) For the reasons explained below, the motion is **GRANTED**.

1

# I

The tax assessments at issue in this action cover two sets of tax years: 2001-2004 (the "First Set of Assessments"), on one hand, and 2011, 2012, 2014, 2017, and 2019 (the "Second Set of Assessments"), on the other hand. The facts related to the two sets of assessments differ and are set forth separately below, along with facts related to bankruptcy proceedings that occurred in between the two sets of assessments.

# A

The Court begins with the facts related to the First Set of Assessments. As noted above, these assessments relate to tax years 2001-2004. The Fakirs, a married couple, filed their federal income taxes jointly for those tax years. (*See* Decl. of Steven J. Kovscek, IRS Revenue Officer Advisor, at ¶ 5, ECF No. 17-1, PageID.104-105.) After reviewing the Fakirs' returns for those tax years, the IRS assessed income tax liabilities against the Fakirs, jointly, for tax years 2001-2004 as follows:

| Tax Period Ending | Assessment Date | Assessment Type | Amount Assessed |
|---|---|---|---|
| 12/31/2001 | 11/25/2002 | Tax | $74,128.00 |
| 12/31/2002 | 12/08/2003 | Tax | $61,121.00 |
| 12/31/2003 | 01/02/2006 | Tax | $12,644.00 |
| 12/31/2004 | 10/31/2005 | Tax | $101,762.00 |

(Kovscek Decl. at ¶ 10, ECF No. 17-1, PageID.106.)

**B**

In March of 2005, the Fakirs filed a voluntary petition for Chapter 11 bankruptcy. *See In re Fakir*, E.D. Mich. Bankr. Case No. 05-46724. The IRS filed a proof of claim in those bankruptcy proceedings. (*See* Proof of Claim, ECF No. 17-2.) In the proof of claim, the IRS sought payment for (1) the amounts assessed under the First Set of Assessments and (2) additional amounts owed under separate assessments for tax years that are not at issue in this action. (*See id.*) The total amount of the claim asserted by the IRS exceeded two million dollars. (*See id.*)

At the conclusion of the bankruptcy proceedings, the Bankruptcy Court entered an order confirming a Chapter 11 Bankruptcy Plan (the "Plan"). (*See* Plan, ECF No. 17-3.) The Plan required the Fakirs to pay the IRS a total of $590,000. (*See id.*, PageID.206.) The first $350,000 was payable through a refinancing of the Fakirs' home, and the remaining balance of $240,000 was payable in quarterly amounts of either $5,000 or 15% of Mr. Fakir's annual net income, whichever was greater, plus interest. (*See id.*, PageID.206-207.) The Plan also provided that the Fakirs' satisfaction of the $590,000 obligation, plus interest, "shall be payment in full of the IRS Claim," and that, "[u]pon full payment" of that amount, "the balance of the claims of the IRS will be discharged." (*Id.*, PageID.207.) The Plan further stated that "[u]pon failure of the [Fakirs] to make any payment due on the [$590,000] which is not cured within 30 days of the mailing of a written notice of default by the

[IRS], the [IRS] may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief from this Court." (*Id.*)

As of September 3, 2014, the Fakirs had missed eight quarterly payments of $5,000 owed under the Plan. (*See* Kovscek Decl. at Attachment C, ECF No. 17-1, PageID.186.)  On September 3, 2014, the IRS mailed the Fakirs written notice of their default. (*See id.*)  The Fakirs did not cure their default within 30 days of September 3, 2014. (*See* Kovscek Decl. at ¶ 13, PageID.107-109.)

C

The Court now turns to the facts concerning the Second Set of Assessments. As noted above, those assessments relate to tax years 2011, 2012, 2014, 2017, and 2019.  During those tax years – unlike the tax years related to the First Set of Assessments – the Fakirs filed separate federal income tax returns. (*See* Mrs. Fakir Dep. at 96:8-97:17, ECF No. 17-4, PageID.235.)  In the Second Set of Assessments, the IRS assessed income tax liabilities against Mr. Fakir, alone, as follows:

| Tax Period Ending | Assessment Date | Assessment Type | Amount Assessed |
|---|---|---|---|
| 12/31/2011 | 11/19/2012 | Tax | $59,738.00 |
| 12/31/2012 | 11/18/2013 | Tax | $15,856.00 |
| 12/31/2014 | 11/23/2015 | Tax | $22,584.00 |
| 12/31/2017 | 10/29/2018 | Tax | $60,233.00 |
| 12/31/2019 | 11/23/2020 | Tax | $105,417.00 |

(Kovscek Decl. at ¶ 11, ECF No. 17-1, PageID.107.)

4

**D**

On February 3, 2016, Mr. Fakir entered into an installment agreement with the IRS (the "February 2016 Installment Agreement"). (Kovscek Decl. at ¶ 8, ECF No. 17-1, PageID.105; February 2016 Installment Agreement, ECF No. 18-2.) Mrs. Fakir was not a party to the February 2016 Installment Agreement. Under the February 2016 Installment Agreement, Mr. Fakir agreed to make installment payments to satisfy his outstanding tax liabilities under the First Set of Assessments and his 2011 income tax liability. (*See id.*)

The February 2016 Installment Agreement was terminated on March 2, 2020. (*See* Kovscek Decl. at ¶ 8, ECF No. 17-1, PageID.105.) At that time, Mr. Fakir had not fully satisfied his obligation to pay the amounts owing under either the First Set of Assessments or his 2011 income tax liability.

Mr. Fakir entered into a second installment agreement with the IRS on April 13, 2021 (the "April 2021 Installment Agreement"). (*Id.*; April 2021 Installment Agreement, ECF No. 18-3.) Mrs. Fakir was not a party to the April 2021 Installment Agreement. (*Id.*) Like the February 2016 Installment Agreement, the April 2021 Installment Agreement obligated Mr. Fakir to make installment payments to satisfy his outstanding tax liabilities under the First Set of Assessments and his 2011 income tax liability. (*See id.*) The April 2021 Installment Agreement was terminated on April 25, 2022. (*See* Kovscek Decl. at ¶ 8, ECF No. 17-1, PageID.105.) At that time,

Mr. Fakir had not fully satisfied his obligation to pay the amounts owing under either the First Set of Assessments or under his 2011 income tax liability.

E

On January 17, 2023, the United States brought this action. In the now-pending Amended Complaint, the United States seeks judgment (1) against Mrs. Fakir for the amounts owing under the First Set of Assessments (with the exception of the assessment for tax year 2001, which the United States no longer seeks) and (2) against Mr. Fakir for the amounts owing under the First and Second Set of Assessments. (*See* Am. Compl., ECF No. 22, PageID.344.)[1]

The United States contends that the following balances are due and owing for the First Set of Assessments, as of October 28, 2024:

| Tax Period Ending | Balance Due 10/28/2024 |
|---|---|
| 12/31/2001 | $102,723.94 |
| 12/31/2002 | $82,584.94 |
| 12/31/2003 | $30,327.25 |
| 12/31/2004 | $143,731.06 |

(Kovscek Decl. at ¶ 10, ECF No. 17-1, PageID.106.) The balance due for each tax

---

[1] The United States filed its Amended Complaint after the filing of its motion for summary judgment with the consent of the Fakirs. (*See* Am. Compl., ECF No. 22, PageIDd.344 n.1.) The United States did so in order to substitute Mrs. Fakir as personal representative of the estate of Mr. Fakir because Mr. Fakir died while this action was pending. The United States also amended its Complaint to dismiss the 2001 claim against Mrs. Fakir.

6

year reflects the original assessment by the IRS for that tax year plus penalties and interest. (*See id.*)  The listed balances account for "all accruals, costs, payments, credits, and abatements." (*Id.*)

The United States contends that the following balances are due and owing for the Second Set of Assessments, as of October 28, 2024:

| Tax Period Ending | Balance Due 10/28/2024 |
|---|---|
| 12/31/2011 | $98,462.02 |
| 12/31/2012 | $10,379.09 |
| 12/31/2014 | $22,257.91 |
| 12/31/2017 | $30.00 |
| 12/31/2019 | $89,247.16 |

(*Id.* at ¶ 11, PageID.107.)  The balance due for each tax year reflects the original assessment by the IRS for that tax year plus penalties and interest.  The listed balances account for "all accruals, costs, payments, credits, and abatements." (*Id.*)

On October 28, 2024, the United States filed a motion for summary judgment. (*See* Mot., ECF No. 17.)  In their response, the Fakirs assert two primary defenses.  First, they contend that the United States' claims are time-barred in part.  Second, Mrs. Fakir asserts that she is entitled to the innocent spouse exception to joint income tax liability under Internal Revenue Code § 6015 and that the United States is

7

therefore not entitled to judgment against her with respect to the First Set of Assessments.[2]

The Court has carefully reviewed the United States' motion and the evidence related to the motion, and it is now prepared to rule on the motion. The Court concludes that it may resolve the motion without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2).

## II

The United States seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

---

[2] As noted above, the United States is not seeking a judgment against Mrs. Fakir with respect to the Second Set of Assessments because those assessments relate to income tax returns filed separately by Mr. Fakir.

III

The Court addresses each of the Fakirs' defenses – statute of limitations and innocent spouse – separately below.

A

The Court begins with the Fakirs' statute of limitations defense. The Fakirs assert this defense only as to certain portions of the United States' claims. More specifically, they argue that the United States' claims are time-barred to the extent that the United States seeks to recover (1) "post-petition, preconfirmation interest" that accrued on the First Set of Assessments during the pendency of the Fakirs' bankruptcy and (2) Mr. Fakir's unpaid tax liability for tax year 2011. (Resp., ECF No. 18, PageID.278.) The Court disagrees.

1

The United States generally has ten years after an assessment of tax liabilities to bring an action to reduce the assessment to a judgment. *See* 26 U.S.C. § 6502(a)(1). That limitations period may be tolled by a number of circumstances. One such circumstance is a taxpayer's bankruptcy. Where a taxpayer files for bankruptcy protection "under title 11 of the United States Code," the limitations period is "suspended for the period during which the Secretary [of the Treasury] is prohibited by reason of" the bankruptcy filing "from collection" and for another "6 months thereafter." 26 U.S.C. § 6503(h), (h)(2). Another circumstance that tolls the

9

limitations period is the termination of an installment agreement between a taxpayer and the IRS concerning the payment of overdue taxes. Upon such termination, the limitations period is tolled for 30 days. *See* 26 U.S.C. §§ 6331(k)(2)(D), (k)(3)(B), (i)(5).

**2**

The United States has set forth in detail its calculations showing that its claims are timely. (*See* Mot., ECF No. 17, PageID.95-98.) As part of those calculations, the United States has shown that the limitations period was tolled by the Fakirs' bankruptcy filing and then tolled for a total of 60 additional days by the IRS's termination of the February 2016 and April 2021 Installment Agreements. (*See id.*) The Fakirs counter that their bankruptcy filing did not toll the limitations period with respect to the entirety of the United States' claims and that the termination of the April 2021 Installment Agreement did not result in any tolling. And they say that those two components of the United States' claims are therefore time-barred.

First, the Fakirs argue that the United States' claim for post-petition, pre-confirmation interest that accrued on the First Set of Assessments during the Fakirs' bankruptcy is time-barred because the bankruptcy filing did not toll the limitations period with respect to that interest. (*See* Resp., ECF No. 18, PageID.277-78.) The sole authority cited by the Fakirs in support of this argument is an internal memorandum issued by the Department of Treasury Office of the Chief Counsel.

10

(*See id.*, citing Memo, ECF No. 18-5.) However, that memorandum reflects only internal IRS deliberations and "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3). In any event, the Fakirs have failed to show that the memorandum compels the conclusion that the limitations period was not tolled with respect to the interest that accrued on the First Set of Assessments during the bankruptcy. Indeed, the Fakirs have not undertaken the analysis that the memorandum says is necessary to answer the tolling question. The memorandum provides that "the terms of an individual debtor's confirmed Chapter 11 plan" must be "examine[d]" in order to determine whether tolling is available for certain components of the United States' claims during the pendency of the bankruptcy. (Memo, ECF No. 18-5, PageID.310.) The Fakirs have not offered any analysis as to how the terms of the Plan indicate that the pendency of the bankruptcy proceedings did not toll the limitations period with respect to the interest that accrued on the First Set of Assessments during the bankruptcy. The United States, in contrast, has persuasively explained why tolling is fully consistent with the terms of the Plan.[3] (*See* Reply, ECF No. 19, PageID.320-

---

[3] The Plan provided that the payment of the Fakirs' $590,000 obligation to the IRS, in addition to interest, "shall be payment in full of the IRS Claim." (Plan, ECF No. 17-3, PageID.207.) That payment included tax liabilities for the First Set of Assessments. (*See id.*, PageID.206-207; *see also* Proof of Claim, ECF No. 17-2, PageID.189.) And the Plan further provided that "[u]pon failure of the Debtors to make any payment due . . . which is not cured within 30 days . . . the Service may exercise all rights and remedies applicable under non-bankruptcy law for the collection of its entire claim[.]" (Plan, ECF No. 17-3, PageID.207.) Thus, under the terms of the Plan, the IRS was not permitted to collect until the Fakirs defaulted and

22.) For all of these reasons, the Court rejects the Fakirs' contention that the limitations period was not tolled during their bankruptcy proceedings with respect to the interest that accrued on the First Set of Assessments during the bankruptcy.

Second, the Fakirs argue that the statute of limitations has expired on the United States' claim for Mr. Fakir's 2011 tax liability because the limitations period was not tolled for 30 days, as the United States contends, by the IRS's termination of the April 2021 Installment Agreement. (*See* Resp., ECF No. 18, PageID.278.) The Fakirs contend that the termination of the April 2021 Installment Agreement did not toll the limitations period because the termination has since been determined – by the IRS Independent Office of Appeals – to have been erroneous. (*See id.*) However, as the United States correctly observes, the Internal Revenue Code addresses what happens in the event that the IRS erroneously terminates an installment agreement, and the Code does not indicate that such a termination results in a loss of tolling. On the contrary, the Code provides that a taxpayer who believes that the IRS has wrongly terminated an installment agreement may file an administrative appeal and that the timely filing of such an appeal results in *further*

---

failed to cure. Since the Plan did not allow the IRS to collect until an event of default, it makes sense to toll the limitations period until such a default occurred.

tolling.[4] *See* 26 U.S.C. § 6331(k)(2)(D). Moreover, upon termination of the installment agreement, the United States was precluded from undertaking any collection action for 30 days. *See* 26 U.S.C. § 6331(k)(2)(D). Given that prohibition, it makes sense to toll the statute of limitations even if the termination was wrongful. *See* 26 U.S.C. § 6331(k)(2)(D), (k)(3)(B), (i)(5) (suspending the statute of limitations during periods when the Secretary of the Treasury is prohibited from collecting). Given these provisions of the Internal Revenue Code – and the Fakirs' failure to cite any law to the contrary – the Court holds that the limitations period was tolled for 30 days by the termination of the April 2021 Installment Agreement even though that termination may have been erroneous. Because that tolling applies, the United States' claim for Mr. Fakir's outstanding 2011 tax liabilities is timely.

**B**

The Court next turns to Mrs. Fakir's argument that she should not be liable for the income tax liability for the First Set of Assessments (which arose out of returns that were jointly filed by Mr. and Mrs. Fakir) because she was an "innocent spouse." (Resp., ECF No. 18, PageID.279-289.) The Court lacks jurisdiction to review Mrs. Fakir's innocent spouse defense because she did not first present that defense to the Secretary of the Treasury.

---

[4] While the Fakirs did file an appeal of the termination of the April 2021 Installment Agreement, their appeal was not timely. (*See* Appeal Ruling, ECF No. 18-4, PageID.301.)

The general rule for taxpayers filing jointly is that both taxpayers are liable for taxes owed during the filing period. *See* 26 U.S.C. § 6015(d)(3). However, the Internal Revenue Code allows for what is known as an "innocent spouse" exception to joint liability. More specifically, the Internal Revenue Code authorizes the Secretary of the Treasury to "relieve" a spouse from tax liability arising under a jointly-filed return if, among other things, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency[.]" 26 U.S.C. § 6015(f)(1). Mrs. Fakir says that the Court should relieve her from liability arising out of the First Set of Assessments because it would be inequitable to require her to satisfy that liability. (*See* Resp., ECF No. 17, PageID.284-289.) She stresses that Mr. Fakir had exclusive control over the couple's finances and tax filings and that it would therefore be unreasonable to hold her responsible for the liability. (*See id.*)

The Court lacks jurisdiction to rule on Mrs. Fakir's innocent spouse defense because she did not first present the defense to the Secretary of the Treasury. Indeed, the Internal Revenue Code specifically provides that it is "the Secretary" who "may relieve" a taxpayer, such as an innocent spouse, from joint liability. 26 U.S.C. § 6015(d)(3). It thus follows that federal courts lack jurisdiction to address an innocent spouse defense in the first instance; the role of the courts with respect to the defense is strictly limited to reviewing a determination by the Secretary of the Treasury

14

whether to accept the defense. *See, e.g., United States v. Wallace*, No. 09-cv-87, 2010 WL 2302377, at *4 (S.D. Ohio Apr. 28. 2010) ("No part of § 6015 confers jurisdiction in the federal district courts to determine innocent spouse claims in the first instance[.]"); *United States v. Stein*, No. 13-CV-00743, 2015 WL 5943441, at *3 (W.D. Ky. Oct. 12, 2015) ("§ 6015 commits to the Secretary the decision of whether to grant or deny an equitable exemption."); *In re Pendergraft*, No. 16-33506, 2017 WL 1091935, at *3 (S.D. Tex. Mar. 22, 2017) ("Section 6015(f) does not allow a bankruptcy court to exercise initial subject matter jurisdiction over an innocent spouse defense because only the Secretary receives the equitable power to grant innocent spouse relief under that Section."); *In re Bowman*, 632 B.R. 64, 65 (E.D. La. 2021) ("Section 6015(e)(1)(A) confers subject-matter jurisdiction upon this Court to determine whether innocent spouse relief should be granted *when it is denied by the Secretary*.").[5]  Because the Court lacks jurisdiction to decide the

---

[5] *See also Hockin v. United States*, 400 F.Supp.3d 1085, 1090 (D. Ore. 2019) (explaining that the review procedure for the innocent spouse defense proceeds with first "filing a request for relief with the IRS," then an appeal to the IRS's Office of Appeals, and it is only after the administrative appeal is decided and a final determination letter is sent that "[t]he taxpayer then has the right to appeal the IRS decision to federal court." (quoting *Wilson v. Comm'r of Internal Revenue*, 705 F.3d 980, 984–85 (9th Cir. 2013))); *Jones v. United States*, 322 F.Supp.2d 1025, 1027 (D.N.D. 2004) ("This action was remanded to the agency for consideration of the innocent spouse defense, resulting in a lengthy stay of the proceedings in this court. After the agency denied the defense, the action was placed back on the calendar and the trial was held.").

availability or validity of Mrs. Fakir's innocent spouse defense, the Court may not deny the United States' motion for summary judgment based on that defense.

## IV

For all of the reasons explained above, the United States' motion for summary judgment (ECF No. 17) is **GRANTED**. The United States shall file on the docket a notice of proposed judgment by **not later than June 18, 2025**. If the Fakirs have objections to the form of that judgment, they shall file such objections by **not later than July 2, 2025**. If the Fakirs do not file objections within that time, the United States shall submit a proposed judgment through ECF Utilities for entry.

**IT IS SO ORDERED.**

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: June 4, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 4, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan<br>
Case Manager<br>
(313) 234-5126